JAMES W. FIELD

| 46 183|
|j 66L 647|

*v.*

THE INHABITANTS OF THE TOWNSHIP OF WEST ORANGE,
IN THE COUNTY OF ESSEX.

1. Where damage results to an individual from the discharge of surface-water upon his land, in consequence of the proper exercise of power granted to a municipality to make and grade highways, no liability exists.

2. But a municipality, under power to make and grade highways, has no right, by artificial drains, to divert surface-water from the course it would otherwise take and cast it, in a body large enough to do substantial injury, on land where, but for such artificial drains, it would not go.

The following opinion was delivered in February Term, 1885, but was omitted from its proper place in the printed volume of the reports:

On final hearing on bill and answer and proofs taken in open court.

*Mr. William B. Guild,* for the complainant.

*Mr. John W. Taylor,* for the defendants.

VAN FLEET, V. C.

The complainant seeks protection against injury from surface-water. His bill alleges that the defendants have changed the ancient course of the surface-water flowing along certain public roads and caused it to be so discharged as to overflow his lands. He alleges that he suffers injury at two different points, and that each results from the illegal acts of the defendants.

Mount Pleasant avenue extends from the crest of the Orange mountain to near the southerly foot of the mountain, where, notwithstanding the highway continues in the same direction, it ceases to be called Mount Pleasant avenue and is called Condit street. At the point where this highway ceases to be called an avenue and becomes a street, Fairmount avenue, a street running

from north to south, intersects it. Mount Pleasant avenue, being a mountain road, carries, in times of heavy rains and the melting of large bodies of snow, a large quantity of water. The complainant alleges that the ancient course of the water, flowing along the northerly side of this avenue, was down Condit street, and thence to a natural stream called Second river; and that the water on the northerly side of the avenue continued to flow in that course until 1873, when the defendants caused its course to be changed, and, by means of a gutter or drain, led it across Mount Pleasant avenue and down Fairmount avenue to a point where the earth is low and marshy, and there discharged· it on private property. The complainant owns land contiguous to that into which this water is discharged. His land is also low and marshy. For the purpose of draining his land at this point, and other land belonging to him lying further south, and lands belonging to other persons in that vicinity, a ditch was constructed many years ago by which the water was conducted to the east branch of the Rahway river. The special injury which the complainant alleges that he suffers by the discharge of the water from Mount Pleasant avenue, at the point above indicated, is that the quantity of water thus brought to the head of the ditch is augmented. to such an extent that the ditch cannot carry it, and his lands are in consequence submerged. He says that the capacity of the ditch is amply sufficient to carry all the water rising naturally in the marshy land at its head and also in the land through which it passes, but not to carry the water brought down from the northerly side of Mount Pleasant avenue; that the ditch was not constructed to drain the public highways and was never used for that purpose until the defendants made the diversion of which he complains.

The other point of injury is on Northfield avenue. The ditch already mentioned, as having been constructed to drain the lands now owned by the complainant and lands owned by others, crosses Northfield avenue. Where it crosses the avenue a county bridge was built in 1855, and eyelets were put in the bridge to carry the water flowing along the avenue into the ditch. Main street intersects a public highway, called Valley road, nearly oppo-

site the point where Northfield avenue intersects it. The descent of Main street for nearly two thousand feet is westward and to Valley road. The complainant alleges that the ancient course of the surface-water flowing along Main street was from east to west to Valley road, and that when the water reached Valley road it turned south and flowed along Valley road until it reached a brook crossing that road and was there discharged. He says that this course was as ancient as the roads themselves, and that the water continued to flow in it until 1873, when the defendants changed its course by constructing a gutter across Valley road, by means of which the water was led into Northfield avenue, and then carried along that avenue to the county bridge and there discharged into the ditch. He further says that, by the discharge of the water from the public highways at the two points indicated, parts of his lands are, for more than half the year, submerged with water from one to three feet in depth, and that the water standing on his land becomes stagnant and foul, and thus not only rendering the parts submerged worthless, but greatly impairing the value of his adjacent lands.

The case made by the bill has been adjudged by this court, and likewise by the court of errors and appeals, to be sufficient to entitle the complainant to relief. *Field* v. *West Orange, 9 Stew. Eq. 118; S. C. on appeal, 10 Stew. Eq. 600.* The broad doctrine declared by some courts—that no right of any kind can be claimed in the flow of surface-water, and that neither its retention, diversion, repulsion or altered transmission will constitute an actionable injury—has never been adopted, in all its length and breadth, in this state. The supreme court has, however, held that, where damage results to an individual from the discharge of surface-water upon his land, in consequence of the proper exercise of power granted to a municipality to make and grade highways, no legal liability exists. Injury may be suffered, but in such case no damages can be recovered. *Town of Union* ads. *Durkes, 9 Vr. 21.*

In the case just cited a street was opened extending from the foot of a hill over its crest. At the top of the hill it was necessary, in order to give the street a suitable grade, to sink the road-

bed below the natural surface of the earth, and an excavation of considerable depth was made at that point. Transverse streets, properly graded, were opened through the street first mentioned. The consequence was that, in times of heavy rains, large quantity of water gathered at the crest of the hill, and, following the declivity of the new street, discharged itself, when near the foot of the hill, on the plaintiff's land. The court held, that cutting this street through the hill, and intersecting it with cross streets, and thus collecting surface-water from the adjacent lands and allowing it to run down on the plaintiff's land, did not constitute an actionable injury. "In all this," the court say, "the corporate authorities did nothing but what they had a right to do; and the result was nothing wrongful, being simply the diversion of surface-water. If, for such a course of acts, an action lie, then scarcely a grade of a street can be made or altered without incurring a similar liability."

The court of errors and appeals, in deciding upon the adequacy of the complainant's case, as exhibited in his bill, to entitle him to relief, expressly affirmed the doctrine laid down in *Town of Union* ads. *Durkes*, but pointed out a notable distinction between that case and the case presented by the complainant's bill. The distinction is this: The injury complained of in *Town of Union* ads. *Durkes* was caused by the discharge of surface-water at the point where the grade of the street compelled its discharge—it could not be discharged elsewhere unless the grade of the street was changed—while in this case, it is alleged that the water is prevented from following the grade of the streets, and is collected from a large district of country and carried, by artificial means, to a point where it would not otherwise go, and is there discharged, in large volume and with great force, on the complainant's land. Mr. Justice Van Syckel, speaking for the court, says: "The authorities are quite uniform in holding that no responsibility attaches for damage done by the diversion of surface-water by the public authorities, where the diversion is merely incidental to and occasioned by the making or alteration of street grades. The injury complained of in this case is not that consequent upon the alteration of grades, but flows from a

scheme put into execution by the municipal authorities by which the water is prevented from following the grade of the streets. By means of artificial ducts or channels, the surface-water over a large district is carried away from where it would otherwise be discharged and made to pour upon the complainant's land. Thus, what is styled the common enemy, which every proprietor must resist as best he may, is invested with accumulated volume and force and thrown upon one in ease of all others." *West Orange* v. *Field, 10 Stew. Eq. 600.* This statement shows very clearly what the court understood to be the nature of the complainant's injuries, and also the means by which they were inflicted. The wrong which the court held should be redressed was this : The defendants had arrested the water in its course down the declivity of the highways as they were graded, and, by artificial means, turned it out of its course and in a direction it would not otherwise have gone, and after having thus collected it from a large district of country, poured it, in its accumulated volume and force, on the complainant's land. The chancellor and Mr. Justice Van Syckel both remarked, that if the defendants could do this without being answerable for the consequences, they would, in effect, have power to condemn private property to public use without compensation.

The defendants were empowered by an act passed in 1870 to improve the highways of West Orange by grading and paving. *P. L. of 1870 p. 468.* Under the authority of that act, they, in 1871, caused the several highways mentioned in the bill to be macadamized and guttered. They deny, by their answer, that in making the improvement any change whatever was made in the course of the flow of the surface-water along any of the highways; they say, on the contrary, that they were careful to avoid any change in that respect, and endeavored to keep the water in its ancient courses and cause it to be discharged at the points where it had long been discharged. They further say that, if the complainant's lands are flooded, his injury is the result of the unfortunate position of his lands, they being lower than the surrounding lands, combined with the fact that this improvement, like all others of like character, necessarily resulted in discharg-

ing a larger quantity of water, in a shorter period of time, than was previously discharged. The improvement consisted in making the roadbed hard and smooth, and giving it such form that it would shed the water falling on it quickly, and paving the gutters at the roadside, so that all the water which was form- erly absorbed by the roadbed and also that which collected and stood in the depressions of the road is now carried off quickly to the points of discharge. As already shown, the defendants are not answerable for any damage which the complainant may suffer in consequence of changes made in the highways pursuant to authority of law. And it will be understood without saying that they cannot be held liable for any injury resulting from the law of gravitation.

The case is now reduced to a simple contest of fact. And the first question to be decided is, Have the defendants arrested the water flowing along the northerly side of Mount Pleasant avenue, and prevented it from following the grade of the street, and, by artificial means, turned it aside from where it would otherwise have gone, and discharged it so near complainant's land as to compel his land to receive it? The complainant, it will be remembered, says that the ancient course of this water was not down Fairmount avenue, but down Condit street. The very pith of his grievance, in respect to this water, is, that the defendants, in making the improvement of 1871, constructed a gutter, just at the point where Mount Pleasant avenue ends and Condit street commences, by which the water was led from the north side of the avenue to the south side, and from thence carried down Fair- mount avenue. Is the complainant right in his statement of fact? Was the course of the water, prior to 1871, down Condit street? Eighteen witnesses have given evidence on this point, five for the complainant and thirteen for the defendants. One of the five called by the complainant says that he will not state, as a positive fact, that the water flowing down the northerly side of Mount Pleasant avenue, when it reached Condit street, con- tinued on down Condit street, but it is his impression that that was the fact; another says that he does not know that he ever saw the water accumulated above Condit street flow down Condit

street, except in times of high water; but the other three state positively that there was a well-defined gutter or ditch on the northerly side of Mount Pleasant avenue which continued on down Condit street, and that from their earliest recollection, covering a period of over forty years, the water flowing along the northerly side of Mount Pleasant avenue, always, up until the defendants changed its course, continued on down Condit street. On the other hand, ten of the witnesses called by the defendants swear that the gutter which carried the water flowing along the northerly side of Mount Pleasant avenue crossed the avenue near the point where the avenue ends and Condit street commences, and that the water coming down that side of the avenue always flowed across the avenue in that gutter, and then down Fairmount avenue; they further say that there was no gutter or ditch, at that point, along Condit street, but that the surface of the earth was such as to constitute a natural barrier against any water flowing down Condit street, except in times of unusually high water, and that at such times the water which flowed over this ridge, as some of the witnesses called it, did not flow in a gutter or drain, but spread itself over Condit street. Some of the witnesses say that the top of this ridge was used as a foot-path, to pass from the shoe shop or factory of Joseph Condit, standing on the northerly side of the avenue, across the avenue and then southward. The whole thirteen swear, the most of them with great positiveness, that the ancient course of the water coming down the northerly side of Mount Pleasant avenue was across the avenue, near the point where it ceases to be called an avenue and becomes Condit street, and thence down Fairmount avenue. Their evidence covers the whole period from 1820 down to the time when it is alleged the course of the water was changed; some of them resided so near the *locus in quo* that it was daily under their observation; they mention facts and circumstances showing the utmost familiarity with the locality and all its peculiarities. Unless they state what is not true, their observations respecting the course of the water were careful and frequent, and their recollection of what they saw clear, strong and accurate.

The question is one which must be solved by the recollection of witnesses, and its decision, like the decision of other disputed questions of fact, must be controlled by the weight of the evidence. The change in the course of the water, if any was made, was made as early as 1871 or 1872. This suit was not brought until 1882. It may not be easy to reconcile the two conflicting statements, but there can be no doubt about which way the weight of the evidence inclines, nor about the fact which the evidence as a whole establishes. The proofs in respect to this branch of the case fail, as I think, to show any case whatever against the defendants.

This brings us to the second question of fact presented by the case, which is, Have the defendants made such change in the course of the flow of the water flowing down Main street as entitles the complainant, under the legal rule above stated, to relief? It will be remembered, that he alleges that the ancient course of this water was down Valley road, and not down Northfield avenue, and that he charges, as the cause of his injury, that the defendants, by the construction of a gutter across Valley road, have led the water down Northfield avenue and discharged it into his ditch, and thus cast upon his land a large quantity of water which would not otherwise have gone there. The wrongful act in this instance, as in the other, consists in turning the water out of that course which it would take if allowed to follow the declivity of the streets, and by that means throwing upon the complainant's land a large quantity of water which, but for such change, would have gone elsewhere. The evidence respecting this grievance leaves it almost as certain as it is in respect to the other ground of complaint, that the complainant is wrong in his facts. Fifteen witnesses have testified as to the course of the water flowing down Main street, six on the part of the complainant and nine for the defendants. Five of those called by the complainant say that the course of this water was down Valley road until 1872 or 1873, when the defendants turned it down Northfield avenue, and that until such change was made none went down Northfield avenue, except in times of freshets or floods. Another says that the original course of the water was

down Valley road, and that the water continued to flow in that direction until a point of time somewhere between 1845 and 1849, when its course was changed, and it was then carried down Northfield avenue. While the nine who were called by the defendants say that the course of the great body of the water was always down Northfield avenue, and not down Valley road ; that it is true that in times of high water a small part of it, possibly twenty per cent., flowed down Valley road, but even at such times the great body of the water went down Northfield avenue. They say the great body of the water always went down Northfield avenue, because it was easier for it to go there, the descent being in that direction. The proof shows that that is the fact. The civil engineer who devised the scheme of the improvement of 1870, and under whose direction it was executed, swears that before the improvement was made there was a fall, in a distance of four hundred and forty feet, of two feet, between the point where Main street intersects Valley road and the county bridge on Northfield avenue over the ditch ; while between the same initial point and the point on Valley road, where the complainant's witnesses say the water was formerly discharged, there was a fall, in a distance of eight hundred and seventy feet, of less than ten inches. Several of the witnesses for the defence also testify that there was no gutter or ditch along Valley road, south of the point where Main street intersects it, by which the water could be carried down that road, and that the water flowing in that direction, in times of floods and freshets, spread itself over Valley road and the lands adjacent. It is not disputed, that in 1855 a county bridge was built on Northfield avenue, over the complainant's ditch, and that eyelets were constructed in the bridge for the purpose of letting the water flowing along the avenue run into the ditch, and that these eyelets were enlarged by the county in 1872. This was prior to the time when the complainant acquired title to the lands which he says the defendants have injured. He did not get title until January, 1873. All the acts of the defendants, which he says work injury to him, were done as early as 1871, yet, according to his proofs, his lands suffered no serious or considerable injury until

1875 or 1876, four or five years after the doing of the alleged wrongful acts. Had the proofs made a much stronger case in favor of the complainant, and shown that the defendants had changed the course of the flow of the water, still, I think, with the fact admitted, that the change was made in 1871 and that no injury resulted until 1875, it would have been very difficult to declare, as a judicial conclusion, in the absence of all evidence tending to explain why cause and effect stood so remote from each other in point of time, that the complainant's injury resulted from the defendants' act.

The facts on which the complainant grounds his right to relief have not, in my judgment, been proved; his bill must, therefore, be dismissed, with costs.